1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   THEODORA MEDLEY,                        No.  2:24-cv-03804 DJC SCR P

12                  Plaintiff,

13         v.                                ORDER

14   S. PFITZER, ET AL.,

15                  Defendants.

16

17         Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights

18   action under 42 U.S.C. § 1983.  Before the court is plaintiff's complaint for screening.  (ECF No.

19   1.)  The Eighth Amendment medical indifference and disability discrimination claims therein

20   were severed from the second amended complaint in plaintiff's other pending civil rights action,

21   Medley v. Pfitzer, et al., Case No. 2:22-cv-00227 DJC SCR P (E.D. Cal.) ("Medley I"), pursuant

22   to District Judge Calabretta's order dated May 15, 2025.[1]  (ECF No. 2.)

23                            **STATUTORY SCREENING**

24         The court is required to screen complaints brought by prisoners seeking relief against "a

25   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In

26   _____

27   [1]  Plaintiff was granted in forma pauperis status in the original action (see Medley I, ECF No. 4)
     and therefore will not be required to pay the filing fee or submit an application to proceed in
     forma pauperis for this action.  See Cortinas v. Colvin, 2024 WL 115766, at *1 (E.D. Cal. Jan. 10,
28   2024) (waiving filing fee for severed action pursuant to Fed. R. Civ. P. 21).

                                        1

1  performing this screening function, the court must dismiss any claim that "(1) is frivolous,

2  malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

3  from a defendant who is immune from such relief." Id. § 1915A(b).   A claim is legally frivolous

4  when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325

5  (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless

6  legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical

7  inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and

8  factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

9       In order to avoid dismissal for failure to state a claim a complaint must contain more than

10  "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

11  of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

12  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

13  statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

14  court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

15  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

16  inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When

17  considering whether a complaint states a claim, the court must accept the allegations as true,

18  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

19  favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

20              **FACTUAL ALLEGATIONS OF THE COMPLAINT**

21       The facts forming the basis of this action occurred at California Health Care Facility,

22  Stockton ("CHCF"), which plaintiff entered on or about February 29, 2016.  (ECF No. 1 at 4, ¶

23  24-25.)  Plaintiff has a documented history of mental health and disability diagnoses, including

24  Autism Spectrum Disorder, dating back to her initial incarceration in 2000.  (Id. at 3, ¶¶ 20-21.)

25       Plaintiff has participated in the Department of Corrections and Rehabilitation's (CDCR)

26  Developmental Disability Program (DDP) since July 20, 2015.  (ECF No. 1 at 4, ¶ 25.)  Upon her

27  DDP screening, plaintiff was designated DD2, which required her to receive adaptive support and

28  accommodations.  (Id.)  As a DD2 she was required to be housed in a designated DDP building,

1    unit, or wing.  Plaintiff also has physical disabilities that require a lower/bottom bunk and housing

2    on the ground floor.  (Id.)  In March 2016, during plaintiff's intake processing at CHCF, she was

3    designated as a DD2 and housed in the E1-Fox housing unit.  (Id., ¶ 26.)

4          Plaintiff was born intersex and experiences Congenital Adrenal Hyperplasia ("CAH").  In

5    2016 plaintiff was prescribed Liquid Nutritional Supplement ("LNS"), Glucerna 1.5, taken four

6    times daily to accommodate her IBS-C, Autism, CAH, and other food intolerances.  (ECF No. 1

7    at 4, ¶ 27.)  When plaintiff is low weight or does not receive sufficient caloric intake, she

8    experiences physical symptoms such as increased pain in her feet and hands and a sensation as if

9    she is having a seizure.  Plaintiff also experiences sensory issues that cause issues with her

10    memory, increased impulsivity, and mood.  (Id. at 4-5, ¶ 28.)  As a result of the treatment plan

11    that included Glucerna, plaintiff was able to gain and maintain her weight.  (Id. at 5, ¶ 29.)  Other

12    LNS supplements, such as Boost and Ensure, do not have the same effect on her.  (Id.)

13          In 2018, defendant Dr. Samiinia removed plaintiff's diagnosis of gender dysphoria and

14    Autism Spectrum Disorder without providing a reason.  As a result, plaintiff was reclassified as a

15    DD1 in the DDP and no longer met the criteria for single cell housing.  (ECF No. 1 at 5-6, ¶ 32.)

16    One week later, Defendant Samiinia reinstated plaintiff's diagnoses but plaintiff's DD2

17    classification was not reinstated.  (Id. at 6, ¶ 33.)

18          Plaintiff was transferred to B-Yard on December 29, 2020.  (ECF No. 1 at 7, ¶ 40.)  While

19    in B-Yard, plaintiff was not provided with her adaptive support accommodations.  (Id. at 8, ¶ 42.)

20    About two weeks into her time in B-Yard, on or about January 4, 2021, defendant Ronwald

21    Vicencio discontinued plaintiff's prescription for Glucerna 1.5 and replaced it with another LNS,

22    Ensure 1.5.  Plaintiff had been taking the same LNS (Glucerna) since 2018 as treatment for

23    plaintiff's digestive disorder.  Ensure has half the caloric density as Glucerna and more sugar, and

24    made plaintiff feel ill, weak, and faint multiple times.  (ECF No. 1 at 8, ¶ 43.)  On January 15,

25    2021, plaintiff was put back on Glucerna.  (Id., ¶ 44.)

26          On March 23, 2021, plaintiff met with Dr. Suresh Hosuru.  (ECF No. 1 at 9, ¶ 46.)  A few

27    days later, plaintiff was put on Ensure because Glucerna was out of stock.  (Id.)  On April 5,

28    2021, plaintiff filed a grievance regarding the change.  (Id., ¶ 47.)  On April 7, 2021, the

1    Reasonable Accommodation Panel ("RAP") denied her request for Glucerna with no

2    acknowledgment that it was a treatment for her Autism, and thus also an accommodation.  (Id., ¶

3    48.)  Defendants Hall, Williams, and Petersen were on the RAP that denied the request.  (Id.)

4         On April 8, 2021, plaintiff met with Melanie Henrey, who said "[she] did not know why

5    [plaintiff] gets Glucerna."  (ECF No. 1 at 9, ¶ 49.)  Plaintiff told Henrey that she had been

6    receiving Glucerna since 2018 and it was a necessary accommodation for her diagnoses of

7    Autism Spectrum Disorder, IBS, CAH, and other digestive disorders, as well as part of her

8    treatment plan to gain weight and maintain a healthy body weight.  During this conversation,

9    Henrey threatened to end plaintiff's Glucerna's prescription because plaintiff filed a grievance.

10        On July 3, 2021, plaintiff was weighed at 145.5 lbs., down from her typical weight of 165

11   lbs.  (ECF No. 1 at 9, ¶ 50.)  On or about July 7, 2021, plaintiff's Glucerna prescription expired.

12   (Id., ¶ 51.)  On July 11, 2021, plaintiff's Glucerna prescription was reinstated, but instead of

13   receiving it four times a day as before, she received it twice per day.  (Id., ¶ 52.)

14        On or about July 10, 2021, defendant Elizabeth Byers visited plaintiff outside of her cell.

15   Plaintiff had not yet met Byers and explained that due to her medical conditions she is unable to

16   eat the foods provided and that Glucerna has been her approved plan of care since 2018.  Byers

17   ignored plaintiff's explanation and informed her that she could not reinstate the Glucerna

18   prescription if plaintiff "refused to eat."  Throughout this interaction, Byers made multiple

19   intimidating statements and threatened to discontinue plaintiff's Glucerna prescription altogether.

20   (ECF No. 1 at 10, ¶ 54.)  That same day, Byers weighed plaintiff at 135 lbs.  (Id., ¶ 55.)

21        On or about August 6, 2021, plaintiff met with defendant Hosuru.  When plaintiff asked to

22   renew her Glucerna 4x prescription, Hosuru declined and told her that she would have to "make

23   up" with the dieticians—referring to Byers and Henrey—because it was a "team decision."  (ECF

24   No. 1 at 11, ¶ 57.)  Plaintiff told Hosuru that she was not able to eat the regular food given to her

25   or think clearly because she was not able to get enough food intake.  Despite this, Hosuru still

26   placed plaintiff on a calorie restriction, limiting her access to Glucerna.  (Id.)

27        On or about October 2023, plaintiff filed an 1824 reasonable accommodation request,

28   requesting: (1) to move from DD1 to DD2 status to receive increased protection and monitoring

4

from the staff, citing that her Autism and ADHD increase her susceptibility to sexual exploitation outside presence of the staff, and (2) single cell status.  (ECF No. 1 at 11, ¶ 60.)  On or about November 13, 2023, the RAP denied plaintiff's requests and removed plaintiff from the DDP altogether.  (Id., ¶ 61.)  The RAP staff present included ADA Coordinator K. Petersen, Chief Physician and Surgeon G. Williams, ADA Analyst L. Bucsit, and Senior Psychologist C. Mohadjer.  Plaintiff was removed from the DDP and her DD1 status was removed.  Plaintiff no longer receives adaptive supports and correctional officers have threatened to put her in a double-cell, which prompts an increase in symptoms related to PTSD and Autism.  (Id. at 11-12, ¶ 61.)

**DISCUSSION**

## I.  Claims for Relief

### A.  Eighth Amendment Deliberate Indifference to Serious Medical Needs

Plaintiff alleges an Eighth Amendment medical indifference claim against ten defendants, all in their individual capacities: Williams, Drey, Hall, Mohadjer, Hosuru, Byers, Henrey, Vicencio, McKenzie, and Samiinia. (ECF No. 1 at 12-13.)  Denial or delay of medical care for a prisoner's serious medical needs may violate the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  Individuals are liable for such a violation only when they are deliberately indifferent to a prisoner's serious medical needs.  Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  Id., citing Estelle, 429 U.S. at 104.  "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez, 203 F. 3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. (Id.) Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. Merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted). A difference of opinion about the proper course of treatment is not deliberate indifference. Nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, as for any § 1983 claim, there must be an actual causal link between the actions of the named defendants and the alleged constitutional deprivation. See Monell v. Dep't of Soc. Services, 436 U.S. 658, 691-92 (1978); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

Plaintiff has failed to allege an Eighth Amendment medical indifference claim against defendants Williams, Drey, Hall, Mohadjer, and McKenzie. While all are medical providers, none of the complaint's allegations relate to their care or treatment of plaintiff's medical needs. See Estelle, 429 U.S. at 103-05 (medical indifference claims rooted in "government's obligation to provide medical care for those whom it is punishing by incarceration.").

Plaintiff, however, has stated an Eighth Amendment medical indifference claim against defendants Hosuru, Byers, Henrey, Vicencio, and Samiinia. The complaint includes sufficient allegations at the screening stage to establish that defendants Hosuru, Byers, Henrey, and

1  Vicencio were deliberately indifferent to her serious, weight-related medical needs.  Specifically,

2  all four either terminated or refused to increase plaintiff's Glucerna prescription despite an

3  awareness of her weight loss and/or inability to eat regular meals.  (See ECF No. 1 at 8-11.)  The

4  complaint also minimally alleges an Eighth Amendment medical indifference claim against

5  defendant Samiinia for removing plaintiff's medical diagnoses of gender dysphoria and Autism

6  Spectrum Disorder, resulting in her reclassification from DD2 to DD1 in the DDP.  (Id. at 5-6.)

7  At the screening stage, defendant Samiinia's reinstatement of the diagnoses the next week is

8  minimally sufficient to show deliberate indifference.

9        Accordingly, the undersigned finds that plaintiff has stated an Eighth Amendment medical

10  indifference claim against defendants Hosuru, Byers, Henrey, Vicencio, and Samiinia, but not

11  against defendants Williams, Drey, Hall, Mohadjer, and McKenzie.

12              **B.  Disability Discrimination**

13        Plaintiff alleges disability discrimination in violation of Title II of the Americans with

14  Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA"), and Section 504 of the Rehabilitation Act,

15  29 U.S.C. § 794a ("Section 504").  To state a claim for violation of Title II, a plaintiff must allege

16  four elements:

17        (1) She is an individual with a disability; (2) she is otherwise qualified to
       participate in or receive the benefit of some public entity's services, programs, or
18      activities; (3) she was either excluded from participation in or denied the benefits
       of the public entity's services, programs, or activities, or was otherwise
19      discriminated against by the public entity; and (4) such exclusion, denial of
       benefits, or discrimination was by reason of her disability.
20

21  O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Duvall v. County

22  of Kitsap, 260 F.3d 1124 (9th Cir. 2001).

23        "A disability discrimination claim may be based on 'one of three theories of liability:

24  disparate treatment, disparate impact, or failure to make a reasonable accommodation.'"  Payan v.

25  Los Angeles Community College Dist., 11 F.4th 729, 738 (9th Cir. 2021).  In contrast to a Title II

26  disparate impact claim, which "is focused on modifying a policy or practice to improve systemic

27  accessibility," a Title II "reasonable accommodation claim is focused on an accommodation

28  based on an individualized request or need[.]"  Id.  In addition, "[t]o recover monetary damages

1  under Title II of the ADA ... a plaintiff must prove intentional discrimination on the part of the

2  defendant." Duvall, 260 F.3d at 1138.

3      While Section 504 has the additional requirement that the program or activity receive

4  federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and

5  obligations created by the ADA and the Rehabilitation Act.  Thus, courts have applied the same

6  analysis to claims brought under both statutes." Zukle v. Regents of the Univ. of Cal., 166 F.3d

7  1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

8      Plaintiff names defendants Williams, Samiinia, Vicencio, Hall, Hosuru, Peterson, Bucsit,

9  Byers, and Mohadjer in their official capacities.  (ECF No. 1 at 13-14.)  While Title II and

10  Section 504 prohibit disability discrimination by public entities and recipients of federal funds,

11  respectively, both legislative schemes permit claims for damages against public officials in their

12  official capacities.  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1188 (9th Cir. 2003).  Therefore,

13  plaintiff's failure to name a public entity is not a bar to suit at the screening stage.

14      The undersigned finds that plaintiff has failed to state cognizable ADA and Section 504

15  claims against defendants Samiinia, Vicencio, Hosuru, and Byers.  All are medical providers or

16  dieticians who allegedly denied plaintiff care by removing diagnoses or changing LNS

17  prescription.  (See, e.g., ECF No. 1 at 5, ¶5 and 8, ¶43.)  "The ADA prohibits discrimination

18  because of disability, not inadequate treatment for disability." Simmons v. Navajo County, 609

19  F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

20      Plaintiff has, however, stated cognizable ADA and Section 504 claims against defendants

21  Williams, Hall, Peterson, Bucsit, and Mohadjer.  The complaint alleges adequate facts linking

22  these defendants to the RAPs that denied plaintiff's various requests for reasonable

23  accommodations, depriving her of her chosen LNS and DDP supports.  (See, e.g., ECF No. 1 at 9,

24  ¶48, and 11, ¶61.)  At the screening stage, these facts are also adequate to support the showing of

25  deliberate indifference required to support ADA and Section 504 claims for damages.

26  Accordingly, the undersigned finds that plaintiff has stated cognizable ADA and Section 504

27  claims defendants Williams, Hall, Peterson, Bucsit, and Mohadjer, but not against Samiinia,

28  Vicencio, Hosuru, and Byers.

## II.    Options From Which to Choose

Based on the court's screening, plaintiff has a choice to make.  After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**Option 1:** The first option available to plaintiff is to proceed immediately against defendants Hosuru, Byers, Henrey, Vicencio, and Samiinia on the Eighth Amendment medical indifference claim, and against defendants Williams, Hall, Peterson, Bucsit, and Mohadjer on the ADA and Section 504 disability discrimination claims.  The court will proceed to immediately serve the complaint and order a response from defendants.  By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants Drey and McKenzie.

**Option 2:**  The second option is to file an amended complaint to fix the problems described above.  If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

## III.    Legal Standards for Amended Complaints

If plaintiff chooses to file an amended complaint, she must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an amended complaint replaces the prior complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's complaint states the following cognizable claims:

   a.  Eighth Amendment medical indifference claim against defendants Hosuru, Byers, Henrey, Vicencio, and Samiinia;

   b.  ADA and Section 504 claims against defendants Williams, Hall, Peterson, Bucsit, and Mohadjer.

2.  Plaintiff has the option to proceed immediately on her cognizable Eighth Amendment medical indifference, ADA, and Section 504 claims as set forth above, or to file an amended complaint.

3.  Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court which option she chooses.

4.  If plaintiff does not return the form, the court will assume that she is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of the Eighth Amendment medical indifference claims against defendants Williams, Drey, Hall, Mohadjer, and McKenzie, and the ADA and Section 504 claims against Samiinia, Vicenio, Hosuru, and Byers.

DATED: June 9, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    THEODRA MEDLEY,                          No.  24-cv-03804 DJC SCR P

11              Plaintiff,

12         v.                                  NOTICE OF ELECTION

13    S. PFITZER, ET AL.,

14              Defendants.

15

16         Check one:

17         _____ Plaintiff wants to proceed against defendants Hosuru, Byers, Henrey, Vicencio,

18              and Samiinia on the Eighth Amendment medical indifference claim, and against

19              defendants Williams, Hall, Peterson, Bucsit, and Mohadjer on her ADA and

20              Section 504 claims.  The court will proceed to serve the complaint and order a

21              response from defendants.  By choosing this option, plaintiff will be agreeing to

22              voluntarily dismiss defendants Drey and McKenzie.

23

24         _____ Plaintiff wants time to file an amended complaint.

25

26    DATED:_____        _____

27                                          Theodora Medley, Plaintiff pro se

28

                                    1